United States District Court
Northern District of California

1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    SCOTT JOHNSON,                                   Case No. 17-cv-04840-SVK

8                 Plaintiff,                          **ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE**

9          v.

10                                                     **REPORT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS SEAN PATRICK JOHNSON, MELAKU DIRES AYNALEM, AND CHALACHEW KASSAYA EJIGU**

11   SEAN PATRICK JOHNSON, et al.,

                 Defendants.

12
13                                                     Re: Dkt. No. 26

14

15          Plaintiff Scott Johnson filed this action for violation of the Americans with Disabilities Act

16   and the California Unruh Civil Rights Act.  Dkt. 1.  The defendants named in the action are Sean

17   Patrick Johnson ("Sean Johnson"), Melaku Dires Aynalem ("Aynalem"), and Chalachew Kassaya

18   Ejigu ("Ejigu") (Sean Johnson, Aynalem, and Ejigu are collectively referred to as "Defendants").

19   *Id.*  Plaintiff contends that at the times relevant to Plaintiff's complaint, Sean Johnson, in his

20   individual capacity and as a trustee, owned the real property located at 1358 S. Winchester Blvd.,

21   San Jose, California, and Aynalem and Ejigu owned the Tana Market located at the same address.

22   *Id.* ¶¶ 2-19.

23          Defendants have not appeared in the action or opposed the motion for default judgment.

24   The Court deems the motion for default judgment appropriate for determination without oral

25   argument pursuant to Civil Local Rule 7-1(b).

26          Although Plaintiff has consented to the jurisdiction of the undersigned magistrate judge

27   under 28 U.S.C. § 636(c) (Dkt. 7), none of the Defendants has consented.  Accordingly, the Court

28   directs the clerk to REASSIGN this case to a district judge with the following REPORT AND

1    RECOMMENDATION that Plaintiff's motion for default judgment be GRANTED IN PART

2    AND DENIED IN PART.  If all Defendants later consent to magistrate jurisdiction, the case may

3    be reassigned to the undersigned magistrate judge.

4    **I.      BACKGROUND**

5           According to the Complaint, Plaintiff is a level C-5 quadriplegic who uses a wheelchair for

6    mobility and has a specially equipped van.  Dkt. 1 at ¶ 1; *see also* Dkt. 26-4 (Johnson Decl.) at

7    ¶¶ 2-3.  Plaintiff's complaint alleges that the configuration of the accessible parking space

8    reserved for persons with disabilities and the transaction counter at the Tana Market violate

9    Plaintiff's rights under the ADA and the Unruh Act.  Dkt. 1 at ¶¶ 24-69.  According to the proofs

10   of service filed by Plaintiff:

11          •   Defendants Aynalem and Ejigu were served with the summons and complaint by

12              substitute service on September 8, 2017, when the documents were left with Bisrat

13              Womdemar, an employee/person in charge, at 1358 S. Winchester Blvd., San Jose,

14              California 95128, and subsequently mailed to the same address.  Dkt. 8, 9.

15              Substitute service was made after unsuccessful attempts to serve Aynalem and

16              Ejigu on September 6, 7, and 8, 2017.  *Id*

17          •   Defendant Sean Johnson was personally served with the summons and complaint

18              on November 10, 2017 at 19270 Quinn Court, Morgan Hill, California 95037.

19              Dkt. 17.

20          None of the Defendants filed an answer or other response to the complaint.  The Clerk of

21   Court entered defaults against Aynalem and Ejigu on October 20, 2017, and against Sean Johnson

22   on December 6, 2017.  Dkt. 12, 13, 19.

23          Plaintiff now moves for default judgment against all three Defendants.  Dkt. 26.  Plaintiff

24   filed a proof of service of the motion on all Defendants.  Dkt. 26-13.  None of the Defendants has

25   filed a response to the motion for default judgment.

26   **II.     LEGAL STANDARD**

27          After entry of default, a court may, in its discretion, enter default judgment.  *See* Fed. R.

28   Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Before entering a default

2

1  judgment, the Court must assess the adequacy of the service of process on the party against whom

2  default is requested. *See Trustees of ILWU-PMA Pension Plan v. Coates*, No. C-11-3998 EMC,

3  2013 WL 556800, at \*4 (N.D. Cal. Feb. 12, 2013). The Court must also determine whether it has

4  subject matter jurisdiction over the action and personal jurisdiction over the defaulted defendant.

5  *Id.* at \*3-4. If the Court concludes that the defaulted defendant was properly served and that the

6  Court has jurisdiction, the Court must next consider whether default judgment is appropriate,

7  considering seven factors set forth by the Ninth Circuit: (1) the possibility of prejudice to the

8  plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint;

9  (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts;

10  (6) whether default was due to excusable neglect; and (7) the strong policy under the Federal

11  Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470,

12  1471-72 (9th Cir. 1986). In considering these factors, the Court takes all well-pleaded factual

13  allegations in the complaint as true, except those concerning damages. *Televideo Sys., Inc. v.*

14  *Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

15       Fed. R. Civ. Proc. 54(b) states that "the court may direct entry of a final judgment as to one

16  or more, but fewer than all, . . . parties only if the court expressly determines that there is no just

17  reason for delay." The Ninth Circuit has held that "where a complaint alleges that defendants are

18  jointly liable and one of them defaults, judgment should not be entered against the defaulting

19  defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. &*

20  *Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow v. De La Vega*, 82 U.S. 552 (1872)).

21  **III.  DISCUSSION**

22       As discussed above, before considering the default judgment factors, the Court must first

23  evaluate whether the defaulted defendants were properly served and whether the Court has

24  jurisdiction.

25       **A.  Service of Process**

26            **1.  Service on Defendant Sean Johnson**

27       Federal Rule of Civil Procedure 4(e)(1) permits an individual defendant to be served

28  "following state law for serving a summons in an action brought in courts of general jurisdiction

3

1   in the state where the district court is located or where service is made." Under California law, an

2   individual defendant may be served "by personal delivery of a copy of the summons and of the

3   complaint to the person to be served." Cal. Code Civ. Proc. § 415.10. The proof of service filed

4   by Plaintiff indicates that personal service was effected on Defendant Sean Johnson. Dkt. 17.

5   Accordingly, the Court concludes that service on Sean Johnson was proper.

6                       **2.      Service on Defendants Aynalem and Ejigu**

7           With regard to service of Defendants Aynalem and Ejigu, the applicable California statute

8   regarding substitute service of individual defendants permits substitute service by leaving a copy

9   of the summons and complaint at the defendant's usual place of abode (i.e., dwelling), usual place

10  of business, or usual mailing address (other than a U.S. Postal Service post office box). Cal. Code

11  Civ. Proc. § 415.20(b). Copies of the summons and complaint must be left "in the presence of a

12  competent member of the household or a person apparently in charge of [the defendant's] office,

13  place of business, or usual mailing address," and copies must thereafter be mailed to the defendant

14  at the same address where the documents were left. *Id.* Substitute service is permitted only "[i]f a

15  copy of the summons and complaint cannot with reasonable diligence be personally delivered to

16  the person to be served … ." *Id.* "[T]he burden is upon the plaintiff to show reasonable diligence

17  to effect personal service and each case must be judged upon its own facts." *Evartt v. Superior*

18  *Court*, 89 Cal. App. 3d 795, 801 (Cal. Ct. App. 1979). Although there is no established formula

19  for reasonable diligence, "[t]wo or three attempts to personally serve defendant at a 'proper place'

20  ordinarily qualifies as 'reasonable diligence.'" Weil and Brown, *California Practice Guide:*

21  *California Civil Procedure Before Trial*, ¶ 4:198 (The Rutter Group June 2019) (citing cases).

22          Plaintiff has demonstrated that Defendants Aynalem and Ejigu were properly served.

23  First, Plaintiff has provided evidence that these defendants own the Tata Market business at

24  1358 South Winchester Boulevard. Dkt. 26-7. This is evidence showing that address is the usual

25  place of business of Aynalem and Ejigu and is thus a proper place for service under Section

26  415.20(b). Second, the proofs of service indicate that the documents were left with Bisrat

27  Womdemar, an "Employee/Person In Charge," and were thereafter mailed to the place where the

28  copies were left. Dkt. 8, 9. Third, Plaintiff has carried his burden of showing reasonable diligence

                                                        4

1    to effect personal service.  The "Declaration of Diligence" submitted by Plaintiff's process server

2    identifies three unsuccessful attempts to serve Aynalem and Ejigu before substitute service was

3    made. *Id*.

4        Accordingly, the Court concludes that service of Aynalem and Ejigu was adequate.

5        **B.    Jurisdiction**

6        When a plaintiff seeks entry of default judgment against a party who has failed to plead or

7    otherwise defend, "a district court has an affirmative duty to look into its jurisdiction over both the

8    subject matter and the parties." *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999).

9        Federal question jurisdiction is based on Mr. Johnson's ADA claim for relief.  28 U.S.C.

10   § 1331.  The Court has supplemental jurisdiction over his Unruh Act claim.  28 U.S.C. § 1367.

11   The Court is also satisfied that personal jurisdiction exists over each Defendant.  The Complaint,

12   as well as public records submitted with the present motion, indicate that all of the Defendants

13   reside in California.  Dkt. 1 at ¶¶ 2-19; Dkt. 26-7.   The property that is the subject of this action is

14   in California and it is owned by Defendant Sean Johnson and houses a store operated by

15   Defendants Aynalem and Ejigu. *Id.*

16       **C.    *Eitel* Factors**

17       Having concluded that Defendants were properly served and the Court has jurisdiction, the

18   Court next considers the *Eitel* factors and concludes that the majority of those factors weigh in

19   favor of entering default judgment against Defendants Sean Johnson, Aynalem, and Ejigu.  As

20   discussed above, Defendants were served with copies of the summons and complaint in this

21   action.  Defendants therefore had notice of these proceedings, and there is no indication that their

22   failure to appear is due to excusable neglect, nor is there any indication of a dispute concerning

23   material facts (fifth and sixth factors).

24       Plaintiffs' claims against the Defendants are adequately pled and sufficient to find liability

25   on the facts alleged, which must be taken as true (second and third factors).  Declining to enter

26   default judgment against the defaulted defendants would prejudice Plaintiff (first factor) because

27   Plaintiff has  no other recourse against Defendants.

28       The amount of money at stake in this action is not insignificant (fourth factor), but default

5

1    judgment is nevertheless appropriate because, as discussed below, the Court will award only the

2    amount of money that comports with Federal Rule of Civil Procedure 54(c).  *See Joe Hand*

3    *Promotions, Inc. v. Mujadidi*, No. C-11-5570 EMC, 2012 U.S. Dist. LEXIS 114585, at * 7 (N.D.

4    Cal. Aug. 14, 2012) (noting that a request for maximum possible statutory damages "is not enough

5    on its own to bar a default judgment ... as it may be addressed by the Court in deciding what

6    damages should be awarded, assuming that a default judgment is otherwise appropriate.").

7         Accordingly, entry of default judgment is appropriate because most of the *Eitel* factors

8    favor entry of a default judgment and, taken together, those factors outweigh the general policy

9    favoring decisions on the merits (seventh factor).  *See J&J Sports Productions, Inc. v. Deleon*,

10   No. 5:13–CV–02030-EJD, 2014 U.S. Dist. LEXIS 4070, at *6-7 (N.D. Cal. Jan. 13, 2014).

11   **IV.    RELIEF AWARDED**

12        The Court must next decide what relief should be awarded in the default judgment.

13   Plaintiff requests that the default judgment include:  (1) "an order requiring defendants provide

14   accessible parking and paths of travel" pursuant to 42 U.S.C. § 12188; (2) statutory damages

15   under the Unruh Act of $4,000 for each of two incidents of discrimination, for a total of $8,000;

16   and (3) attorney's fees and costs in the amount of $5,910 pursuant to 42 U.S.C. § 12205 and Cal.

17   Civ. C. § 52(a).

18        **A.    Injunctive Relief**

19        Plaintiff seeks an order requiring Defendants to provide accessible parking and an

20   accessible sales counter at the Tana Market.  Dkt. 26-2.  Aggrieved individuals "may obtain

21   injunctive relief against public accommodations with architectural barriers, including 'an order to

22   alter facilities to make such facilities readily accessible to and usable by individuals with

23   disabilities.'"  *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 730 (9th Cir. 2007) (quoting 42 U.S.C.

24   § 12188(a)(2)).  Injunctive relief is also available under the Unruh Act.  *See* Cal. Civ. C. § 52.1.

25   "The standard requirements for equitable relief need not be satisfied when an injunction is sought

26   to prevent the violation of a federal statute that specifically provides for injunctive relief."

27   *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010), *cert. den.,*

28   563 U.S. 956 (2011) (citations omitted).  Thus, injunctive relief is proper under the ADA where

1    the plaintiff establishes that "architectural barriers at the defendant's establishment violate the

2    ADA and the removal of the barriers is readily achievable." *Ridola v. Chao*, No. 16-cv-02246-

3    BLF, 2018 WL 2289668, at *13 (N.D. Cal. May 18, 2018) (citing *Moreno v. La Curacao*,

4    463 Fed. App'x 669, 670 (9th Cir. 2011)).

5        Plaintiff has shown that he is entitled to injunctive relief with respect to the parking space

6    and transaction counter at the Tana Market property.  The Court recommends that his request for

7    injunctive relief be granted.  *See Johnson v. Oakwood Ctr. LLC*, No. 19-cv-01582-VKD, 2019 WL

8    7209040, at *9 (N.D. Cal. Dec. 27, 2019) (citation omitted).

9        **B.    Statutory Damages**

10       Monetary damages are not available in private suits under the ADA.  *Molski*, 481 F.3d at

11   730.  However, the Unruh Act imposes liability for actual damages of no less than $4,000 "for

12   each occasion an individual is denied equal access to an establishment covered by the Unruh Act.

13   *Ridola*, 2018 WL 2287668, at *15 (citing California Civil Code § 52(a)).  The plaintiff need not

14   prove that he suffered actual damages to recover these statutory damages.  *Molski*, 481 F.3d at

15   731.

16       As discussed above, Plaintiff seeks relief with respect to the parking space and transaction

17   counter at Tana Market.  Plaintiff seeks statutory awards of $4,000 against Defendant Sean

18   Johnson and $4,000 against Defendant Aynalem and Ejigu, jointly and severally, in connection

19   with Plaintiff's several visits to the Tana Market.  Dkt 26-4 ¶ 5; Dkt. 26-1 at 18.  The Court

20   recommends that his request for $8,000 in statutory damages be granted.

21       **C.    Attorney's Fees and Costs**

22       Plaintiff requests $5,901 in attorney's fees and costs.  Dkt. 26-2; Dkt. 26-3 at 7.  A district

23   court may, in its discretion, award the prevailing party in an ADA case a reasonable attorney's fee,

24   including litigation expenses and costs.  42 U.S.C. § 12205.  Similarly, the Unruh Act provides for

25   an award of fees "as may be determined by the court."  Cal. Civ. C. §§ 52(b)(3), 52.1(c).  "The

26   Supreme Court has explained that, in civil rights cases, the district court's discretion is limited"

27   and "[a] prevailing party under the ADA should ordinarily recover an attorney's fee unless special

28   circumstances would render such an award unjust."  *Jankey v. Poop Deck*, 537 F.3d 1122, 1130

7

1    (9th Cir. 2008) (citations omitted).

2         In calculating attorney's fees, courts usually follow the lodestar approach of multiplying a

3    reasonable hourly rate by the number of hours reasonable expenses on the litigation. *Hensley v.*

4    *Eckerhart*, 461 U.S. 424, 433 (1983).  The party seeking fees bears the burden of establishing

5    entitlement to an award, and the fee applicant must "submit evidence supporting the hours worked

6    and rates claimed." *Id.* at 437.

7         "There is a strong presumption that the lodestar figure represents a reasonable fee."

8    *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).  However, the district court

9    must assess whether it is necessary to adjust the lodestar figure on the basis of certain factors that

10   are not already subsumed in the initial lodestar calculation. *Id.* at 364.  The 12 relevant factors

11   were enumerated in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*,

12   425 U.S. 951 (1976).[1]

13              **1.      Attorney's Fees**

14                   **a.      Calculating the Lodestar**

15                        **i.      Reasonable Hourly Rate**

16        In determining a reasonable hourly rate, the fee applicant has the burden of producing

17   evidence, other than declarations of interested counsel, that the requested rates are in line with

18   those prevailing in the community for similar services by lawyers of reasonably comparable skill,

19   experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Chalmers v.*

20   *City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  For this purpose, the relevant

21   community is the forum in which the district court is located. *Barjon v. Dalton*, 132 F.3d 496, 500

22   (9th Cir. 1997).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing

23   fees in the community, and rate determinations in other cases, particularly those setting a rate for

---

25   [1] The *Kerr* factors are (1) the time and labor required, (2) the novelty and difficulty of the
26   questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion
     of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6)
27   whether the fee is fixed or contingent, (7) time limitations imposed by the client or the
     circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,
28   and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the
     professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

1    the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United*

2    *Steelworkers of Amer. v. Phelps Dodge Co.*, 896 F.2d 403, 407 (9th Cir. 1990).

3          Plaintiff's fee request in this case seeks fees for three attorneys who staffed this matter,

4    divided into two tiers of rates based on differences in the experience level of the attorneys, as

5    follows:

6         • Plaintiff seeks $650 per hour for Mark Potter and Russell Handy.  Dkt. 26-3 ¶¶ 8-9.

7           Mr. Potter is the managing partner of the Center for Disability Access, which

8           represents Plaintiff in this case.  *Id.*  ¶ 8.  Mr. Potter's practice has focused on

9           disability issues for 25 years, and he has litigated over 2,000 disability cases.  *Id.*

10          Mr. Handy has practiced disability litigation for 21 years and has prosecuted over

11          1000 ADA cases.  *Id.* ¶ 9.

12        • Plaintiff seeks $600 per hour for Phyl Grace.  *Id.* ¶ 10.  Ms. Grace has practiced for

13          over 25 years, focusing exclusively on disability access litigation for the past 16

14          years.  *Id.*

15         Plaintiff argues that these hourly rates are reasonable in light of fee awards in other civil

16   rights cases, particularly in other ADA cases in this District.  Dkt. 26-1 at 20-24.  In support of his

17   request for attorney's fees, Plaintiff has submitted a declaration from Mr. Handy, one of the

18   attorneys for whom fees are sought.  Dkt. 26-3.  Mr. Handy's declaration includes a description of

19   the attorneys' qualifications and experience, as well as a billing statement for work performed in

20   this case.  *Id.*  Mr. Handy's declaration also includes as attachments declarations from two other

21   attorneys, whom Mr. Handy characterizes as experts in the analysis of fees for ADA plaintiff's

22   attorneys.  *See* Dkt. 26-9 (Declaration of Richard Pearl) and Dkt. 26-11 (Declaration of John

23   Connor).  Mr. Handy's declaration also attaches excerpts of a 2018 Real Rate Report regarding

24   law firm rates.  Dkt. 26-10.  Plaintiff also highlights a decision by another court in this District

25   awarding hourly rates of $650 to Mr. Potter, Mr. Handy, and Ms. Grace.  Dkt. 26-1 at 24; Dkt. 26-

26   8 (March 11, 2019 Report and Recommendation Regarding Plaintiff's Motion for Default

27   Judgment in *Love v. Rivendell II*, No. 3:18-cv-03907-JST (EDL)).

28         In another recent ADA case before this Court, Plaintiff also requested an hourly rate of

9

1    $650 for Mr. Potter.  *See* Order on Plaintiff's Motion for Attorney's Fees, Dkt. 26 in *Johnson v.*

2    *Campbell Plaza Development Co.*, N.D. Cal. Case No. 18-cv-05878-SVK (Sep. 27, 2019) (the

3    "*Campbell Plaza* Order").  In the *Campbell Plaza* Order, the Court extensively discussed

4    *Rivendell*, other attorney's fees awards to the law firm that represents Plaintiff in this case at rates

5    lower than those in *Rivendell*, and rates awarded to attorneys from other firms in ADA cases, and

6    concluded that a reasonable hourly rate for Mr. Potter was $475.  Another court in this District

7    also recently awarded Mr. Potter and Mr. Handy fees at an hourly rate of $475 after engaging in a

8    similar, extensive analysis of the relevant factors.  *See Oakwood Ctr.*, 2019 WL 7209040, at *12.

9    In *Campbell Plaza*, Plaintiff did not proffer declarations from experts in setting ADA rates.

10   However, the declarations provided in this case do not change the Court's conclusion that the

11   hourly rates set in *Campbell Plaza* are reasonable in this case.  Mr. Pearl's declaration was

12   prepared in connection with other litigation, and it is not clear whether Mr. Connor's declaration

13   was prepared in this case or a different case.  Neither declaration addresses any specifics of the

14   case at hand, and Mr. Connor's declaration relies in part on rates awarded in cases this Court

15   distinguished in its *Campbell Plaza* Order.  *See Campbell Plaza* Order at 4-5.

16   After considering the entire record, including the evidence presented in support of

17   Plaintiff's request for attorney's fees in this case balanced against all of the reasons more fully

18   discussed in the *Campbell Plaza* and *Oakwood Center* decisions, the Court concludes that an

19   hourly rate of $475 is appropriate for Mr. Potter and Mr. Handy in this case.  *See United*

20   *Steelworkers of Amer. v. Phelps Dodge Co.,* 896 F.2d at 407.  Plaintiff has requested a lower rate

21   ($600 per hour) for Ms. Grace than Mr. Potter and Mr. Handy ($650 per hour).  Ms. Grace has less

22   experience exclusively litigating ADA cases than Mr. Potter or Mr. Handy, but more than

23   attorneys from the same firm for whom the Court found a rate of $410 reasonable in *Campbell*

24   *Plaza.*  Accordingly, the Court concludes that an hourly rate of $450 is appropriate for Ms. Grace.

25                              **ii.    Number of Hours Reasonably Expended**

26   Plaintiff bears the burden of documenting the appropriate hours expended.  *Oakwood Ctr.*,

27   2019 WL 7209040, at *13.  Here, Plaintiff has presented an itemized billing statement showing a

28

10

total of 8.4 hours expended. The Court concludes that 8.4 hours expended by Plaintiff's attorneys in this case was not unreasonable.

### iii. Lodestar Amount

Multiplying the reasonable hourly rates and the hours reasonably expended yields a lodestar amount of $3,937.50, calculated as follows:

| Attorney | Hourly Rate | Hours | Total |
|----------|-------------|-------|-------|
| Mark Potter | $475 | 0.9 | $427.50 |
| Russell Handy | $475 | 5.4 | $2,565.00 |
| Phyl Grace | $450 | 2.1 | $945.00 |
| **TOTAL** | | | **$3,937.50** |

### 2. Adjustments to the Lodestar

The Court next considers whether to deviate from the lodestar amount under the *Kerr* factors. As discussed above, there is a strong presumption that the lodestar figure represents a reasonable fee, and thus departure from the lodestar figure is warranted only in "rare and exceptional cases." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011) (citations omitted). The Court finds that this is a routine case in which the *Kerr* factors are adequately accounted for in the lodestar computation, and thus no departure from the lodestar figure is warranted.

### 3. Costs

The Court finds that Plaintiff has submitted sufficient evidence to substantiate that he incurred costs of $400 for the filing fee; $100 for an investigator; and $45 in service costs. Dkt. 26-3. The Court therefore awards Plaintiff $555 in costs.

## V. CONCLUSION

For the reasons stated, the Court orders the Clerk to REASSIGN this case to a district judge, and the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment be GRANTED as to Defendants Sean Johnson, Aynalem, and Ejigu.

2. Plaintiff be awarded statutory damages in the amount of $8,000.

3. Plaintiff be awarded attorney's fees in the amount of $3,937.50.

4. Plaintiff be awarded costs of $555.

5. Plaintiff be granted an injunction requiring Defendants to provide an accessible parking space and transaction counter at the Tana Market property.

Plaintiff shall promptly serve each Defendant with this Report and Recommendation and file a proof of service with the Court.  Any party may file objections to this Report and Recommendation within fourteen days.  Fed. R. Civ. P. 72(a); N.D. Cal. Civ. L.R. 72-2.

**SO ORDERED.**

Dated: February 25, 2020

SUSAN VAN KEULEN
United States Magistrate Judge